[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 241 
The plaintiffs in a medical-malpractice case pending in the Mobile Circuit Court petition for a writ of mandamus. The petition presents the question whether the plaintiffs have clearly shown that they are entitled to an order of the trial court allowing them to discover certain evidence the defendants claim is privileged and need not be disclosed. After considering the record and the able arguments made by the parties in their respective briefs, we conclude that, as to part of the relief they request, the plaintiffs have met their burden of showing that the trial judge abused his discretion in denying their motion to compel disclosure. We grant the petition in part and deny it in part.
 Facts and Procedural History
Leigh Claire Cryer and Robert Lee Cryer, Jr., filed a wrongful-death action against Dr. Judy deLacee Corbett and her employer, Mobile Ob-Gyn, P.C. ("MOG"), claiming that the defendants had negligently failed to provide appropriate care and treatment for the plaintiffs' infant child, Taylor Brianna Cryer, during labor and delivery, and that as a direct consequence of that negligence Taylor Brianna Cryer had died. The Cryers also sought damages against MOG based on an allegation of negligence in hiring and retaining Dr. Corbett and in failing to train and properly supervise her. The Cryers subsequently amended their complaint to add claims alleging negligence against an additional codefendant, Providence Hospital ("Providence").
The evidence shows, without dispute, that Leigh Claire Cryer gave birth to Taylor Brianna Cryer, by caesarean section, at a hospital operated by Providence, on February 27, 1998. The defendant Dr. Judy deLacee Corbett, an employee of MOG, *Page 242 
delivered the baby. Taylor Brianna Cryer died on March 13, 1998.
The Cryers sought pretrial discovery from Dr. Corbett and MOG, by serving on them interrogatories and requests for production of documents. Dr. Corbett and MOG responded to some of the plaintiffs' requests, but objected to responding to certain other requests for disclosure regarding matters that the defendants claimed were privileged against disclosure, under the provisions of § 22-21-8, Ala. Code 1975, or that they claimed were records that were prepared in anticipation of litigation or were protected against disclosure by the attorney-client privilege or the "self-critical-analysis" privilege. Dr. Corbett claimed that she should not be compelled to answer or make disclosure regarding the following interrogatories and requests:
 "5. [Produce a] copy of all notes or reports you have made concerning Leigh Clair Cryer and/or Taylor Brianna Cryer.
 "8. Have you discussed the facts made the basis of this lawsuit with any person other than your attorney? If so, state the name and address of each such person.
 "9. Have you made any statements in writing or made any statements orally that were recorded or transcribed that relate to the facts and incident made the basis of this lawsuit? If so, state the date of the statement, the name of the person to whom it was given, and how it was prepared.
 "10. Have you made any notes, prepared any reports, or written or received any correspondence . . . that relates to the facts or incident made the basis of this lawsuit? If so, identify each type of document, when you prepared or received it, and who presently has possession of it."
MOG, although responding to some of the Cryers' requests for production, objected to one request, as follows:
 "26. Was an investigation conducted by any physician, member, agent, servant, employee or other individual(s) acting on your behalf relating to the incident made the basis of this lawsuit?
"If so:
 "a. State the name(s), addresses, and the job titles of any and all individuals who participated in the investigation;
 "Answer: Drs. Corbett, Koch, Plessela, Inge, Hanes, Madonia and Hamilton.
 "b. State the date or dates on which the investigation was conducted;
"Answer: March 9, 1998.
 "c. State whether any report or other written documentation was created as a result of the investigation and state the name(s), address(es), and job title(s) of the individual(s) who prepared the report or other written documentation;
"Answer: Dr. Madonia made handwritten notes.
 "d. Produce the originals or true and complete copies of any and all written reports or other documentation which relate in any manner to the investigation;
"Answer: Object. . . ."
The ground of the objection was that the requested information was privileged by the provisions of § 22-21-8, Ala. Code 1975, the attorney-client privilege, the work-product doctrine, and the "self-critical-analysis" privilege. Dr. Corbett filed a motion for a protective order, with a supporting affidavit.
After conducting a hearing, the trial court denied the Cryers' motion to compel *Page 243 
and entered a protective order for Dr. Corbett. The Cryers then filed this petition for the writ of mandamus, requesting this Court to direct the trial court to vacate the protective order and to grant the Cryers' motion to compel.
 I.
We first state the rules of law that govern this Court's review of a mandamus petition in a case involving an order of a trial judge entered in regard to a discovery dispute.
The general rule in Alabama is that "`[d]iscovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant.'" Ex parte Coosa Valley Health Care, Inc.,789 So.2d 208 (Ala. 2000) (quoting Wolff v. Colonial Bank, 612 So.2d 1146,1146 (Ala. 1992)). "`A petition for the writ of mandamus is the proper means for obtaining review of the question "whether a trial court has abused its discretion . . . in resolving discovery matters. . . ."'" Id. at 216, quoting Ex parte Water Works Sewer Bd. of the City ofBirmingham, 723 So.2d 41 (Ala. 1998), quoting in turn Ex parte CompassBank, 686 So.2d 1135 (Ala. 1996). Nevertheless, "The writ of mandamus is a drastic and extraordinary remedy, to be issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Coosa Valley Health Care,Inc., 789 So.2d at 216. However, "`"the right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,"' and `"the writ will not issue where the right in question is doubtful."'" Id. at 216 (quoting earlier cases). Although mandamus is a drastic and extraordinary remedy, "[a] petition for a writ of mandamus will be granted to compel discovery if a clear abuse of discretion is shown." Ex parte Fuller, 600 So.2d 214, 216
(Ala. 1992); see Ex parte Cummings, 776 So.2d 771, 774 (Ala. 2000).[1]
 II.
The Cryers contend that the trial court abused its discretion in refusing to compel the defendants to produce certain notes that Dr. Corbett made on March 7 and 8, 1998, in preparation for a meeting with the physician shareholders of MOG on March 9, 1998. It is undisputed that Dr. Corbett, on March 7 and 8, 1998, prepared handwritten notes to use at this meeting of the physician shareholders. The record also shows that Dr. Philip Madonia, president of MOG, made handwritten notes at the meeting.
The Cryers, in their brief, maintain that they seek only the handwritten notes and statements made by Dr. Corbett on March 7-8, 1998, and handwritten notes and statements made by the president of MOG at the March 9 meeting, and that they do not seek any information protected by Providence's Peer Review Committee or information that would be protected by the attorney-client privilege.
Dr. Corbett and MOG admit that a meeting was held on March 9, 1998, at which the physician shareholders of MOG met with Dr. Corbett to discuss the Cryer *Page 244 
delivery. Both of those defendants argue, however, that the handwritten notes and oral statements made at the meeting are privileged from discovery under the provisions of § 22-21-8, Ala. Code 1975, sometimes referred to as Alabama's "peer-review statute." Section 22-21-8
states:
 "(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
 "(b) All accreditation, quality assurance credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials."
(Emphasis added). MOG argues that the notes and statements qualify for the confidentiality provided by § 22-21-8, Ala. Code 1975, because its shareholder physicians qualify as a "medical staff" within the purview of the statute. MOG maintains that the sole purpose of the March 9, 1998, meeting with Dr. Corbett was to maintain quality assurance, as contemplated by the Legislature when it adopted § 22-21-8. We must consider this question: Did the Legislature intend for the shareholder physicians of a private corporation to qualify as a "medical staff" under the provisions of § 22-21-8? The answer to that question will help to resolve at least one of the disputes between these parties.
In answering that question, we note, first, that the statute does not specify what qualifies as a "medical staff" for the purposes of the statute. Consequently, we must apply the plain meaning of the term and look to the legislative intent and the policy behind the statute to determine the extent of any privilege. In this regard, we note that "[i]n construing a statute, we must ascertain and give effect to the intent of the Legislature as that intent is expressed through the language of the *Page 245 
statute," and that "[t]he intent of the Legislature in adopting a statute may be gleaned from considering the language used, the reason and necessity for the statute, and the goals the Legislature sought to accomplish." Ex parte Krothapalli, 762 So.2d 836, 838 (Ala. 2000).
Section 22-21-8 is codified from Act. No. 81-801, Ala. Acts 1981. The title to that Act reads: "To provide for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff." We note that Act No. 81-801 has been placed in Chapter 21 of Title 22, and that Chapter 21 is entitled "Hospitals and Other Healthcare Facilities Generally." Although the fact that Act No. 81-801 is placed in Chapter 21 of Title 22, is not controlling, we have examined how the Legislature has used the words "medical staff" or "medical staffs" in other sections of the Code; we conclude that in each instance the words "medical staff" or "medical staffs" apply to hospitals or similar facilities.[2] Although the Legislature might have drafted the title to Act No. 81-801 and the body of the Act to include the word "thereof," after the words "medical staff," we believe our interpretation of the Act is consistent with the intent expressed in the Act itself. The Act specifically provides for the confidentiality of all written materials and activities concerning the accreditation, quality assurance, or similar function of any hospital, clinic, or medical staff. Accreditation and quality-assurance functions generally are considered to be connected to hospitals, clinics, etc., that are regulated in a manner different from an individual physician or a group of physicians operating as a private association or a private corporation, as is the case here. Consequently, we conclude that the Legislature intended only to provide for the confidentiality of all written materials and activities concerning hospitals and clinics, not private associations or corporations or individual physicians. But assuming, arguendo, that the peer-review statute was *Page 246 
applicable here, we still would conclude that the plaintiffs were entitled to certain items of the discovery Dr. Corbett and MOG objected to. The evidence in the record before us is insufficient to show that the purpose of the meeting on March 9 was related to any kind of accreditation or quality assurance. In fact, the logical inference that can be drawn from the facts that were before the trial judge is that the meeting was for the purpose of discussing Dr. Corbett's future with MOG.
This Court recently addressed the confidentiality of hospital and physician information in Ex parte Anderson, 789 So.2d 190 (Ala. 2000): "Section 22-21-8, as explained in [Ex parte Qureshi, 768 So.2d 374 (Ala. 2000),] and Krothapalli, provides that under our peer review statute, information and documents produced by hospitals, their agencies, or bodies, in furtherance of their official duties and activities in regard to the peer-review process, are not discoverable." Id., 789 So.2d at 202.
Based on the foregoing, we conclude that the statements at issue in this case did not constitute a part of a peer-review process, as contemplated by the Legislature when it adopted § 22-21-8, Ala. Code 1975. Although the trial judge did not specify his reasons for refusing to order the discovery, we conclude that notes made by Dr. Corbett in preparation for a meeting of MOG to discuss Dr. Corbett's job performance, as well as notes made by Dr. Madonia at that meeting, fall outside the scope of § 22-21-8, Ala. Code 1975. Consequently, we conclude that the trial judge erred, if his refusal to require disclosure was based on the provisions of the peer-review statute.
 III.
Dr. Corbett presents other reasons she claims her notes are protected against disclosure. She argues that her notes are privileged because they were made in contemplation of litigation and constitute her "work product," and she also asserts that her notes are protected under the attorney-client privilege. Rule 26(b)(3), Ala.R.Civ.P., sets out the "work-product doctrine":
 "Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
"`Under Rule 26(b)(3), the party objecting to discovery bears the burden of establishing the elements of the work-product exception.'" Ex parteCummings, 776 So.2d 771, 774 (Ala. 2000) (quoting Ex parte Garrick,642 So.2d 951, 952-53 (Ala. 1994)). In Cummings, this Court said:
 "`"[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."' `The fact that a defendant anticipates the contingency of litigation resulting from an *Page 247 
accident or event does not automatically qualify an "in house" report as work product.' . . . A motion to compel filed by the party requesting discovery puts the parties at issue."
776 So.2d at 774 (citations omitted). The Cryers' motion to compel placed the parties at issue as to whether Dr. Corbett's notes were prepared in anticipation of litigation. Thus, Dr. Corbett must establish that the notes were prepared in anticipation of litigation or that they included communications to or from her attorney. Dr. Corbett argues that she supported her assertions of privilege with an affidavit, in which she stated:
 "Following the events involving Leigh Cryer on February 27, 1998, I reported and discussed this matter with my insurance carrier on March 6, 1998. I received a letter from Andrew T. Citrin, Esq., requesting a copy of our office chart in early to middle March 1998. The letter was dated March 6, 1998 and is attached as Exhibit `A'. I prepared notes to make a presentation to my group concerning this case on March 7 and 8, 1998. I also discussed this case with an independent physician the day prior to my presentation. I made this consultation for purposes of my presentation as well as anticipation of litigation."
Dr. Corbett further argues she asserted the attorney-client privilege by stating that the record shows that the Cryers hired an attorney on March 3, 1998, and that a letter requesting medical records was written by the attorney's office on March 6, 1998, indicating that the Cryers were anticipating litigation. Dr. Corbett maintains that because this action arises out of the death of an infant, the trial court could have concluded that Dr. Corbett prepared her notes for the March 9, 1998, meeting anticipating litigation.
"When it is asserted that an otherwise discoverable document was made `in anticipation of litigation,' the objecting party bears the burden of proving the elements of the work-product exception of Rule 26(b)(3)." Simsv. Knollwood Park Hosp., 511 So.2d 154, 156 (Ala. 1987) quoting Hickmanv. Taylor, 329 U.S. 495 (1947) (incident report prepared by hospital personnel was not "work product" falling within the protection of the trial-preparation exception, although the hospital, against which the negligence action was brought by Sims, contended that the report had been prepared in anticipation of litigation). In Sims, the Court, citing BinksManufacturing Co. v. National Presto Industries, Inc., 709 F.2d 1109,1118-19 (7th Cir. 1983), held that "speculation as to possible litigation is not enough to cloak those reports with the protection given an attorney's work product." Id. at 157. "While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." Id. at 158 (quoting Binks Mfg. Co., supra,709 F.2d at 1119, quoting in turn Janicker v. George Washington Univ., 94 F.R.D 648,650 (D.D.C. 1982)).
As this Court has previously held, the fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify evidence as being "work product." Exparte Cummings, supra. Applying that rule of law to this case, we find that the record shows that when Dr. Corbett made her notes for the meeting in question, the Cryer infant was alive, and that Dr. Corbett did not know the Cryers had hired an attorney.
Furthermore, we note that Dr. Corbett, in her affidavit, does not state specifically when she received the March 6, 1998, *Page 248 
letter from Mr. Citrin, or when she became aware of it. The time when Dr. Corbett received this letter, or otherwise became aware of it, is extremely important on the issue of what primarily motivated her to make the notes of March 7 and 8, 1998. Was her motivation purely for the purpose of making a "a presentation to [her] group concerning this case," which is the only reason she explicitly states in her affidavit, or was she also motivated because she anticipated litigation? We note that the March 6 letter was addressed "Mobile OB-GYN, P.C., Attn: Medical Records, 6701 Airport Boulevard, Suite B321, Mobile, AL 36608." The letter was dated March 6, 1998, which was a Friday. Dr. Corbett made her notes on the next two days, March 7 and 8. Her meeting with the shareholders of her employer, MOG, was scheduled for, and took place on, March 9. Although she states that she "reported and discussed this matter with [her] insurance carrier on March 6, 1998," nothing shows that she discussed the matter with her insurance carrier because she had seen, or was aware of, the March 6, 1998, letter from Citrin. In fact, all she says in her affidavit concerning her receipt of the letter is "I received [it] in early to middle March 1998." Based on what is before us, it is difficult for us to see how the trial judge could infer that Dr. Corbett was aware of the contents of the March 6, 1998, letter from Citrin, or that she prepared the notes on March 7 and 8 in anticipation of the litigation that was subsequently begun. Based on all of the foregoing, we hold that Dr. Corbett has not satisfied her burden of establishing that her notes were prepared in anticipation of litigation. Because Dr. Corbett and MOG have not established that those notes contain privileged attorney-client communications, we conclude that the trial judge abused his discretion in denying the Cryers' motion to compel discovery of Dr. Corbett's notes for the March 9, 1998, meeting.
 IV.
The Cryers next argue that the trial court erred in not granting their motion to compel Dr. Corbett to identify all persons with whom she had discussed the Cryer delivery. Dr. Corbett argues that she is privileged from naming an independent physician with whom she had consulted, because the physician is an expert and she consulted that physician in anticipation of litigation. The Cryers argue that this independent physician is not an expert, but a witness. The Cryers maintain they are entitled to discover this physician's identity because Rule 26(b)(1), Ala.R.Civ.P., provides, "Parties may obtain discovery regarding any matter, not privileged, . . . if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." In her affidavit, Dr. Corbett states that she "discussed this case with an independent physician the day prior to [her] presentation." She further stated in the affidavit: "I made this consultation for purposes of my presentation as well as in anticipation of litigation."
Regarding the question whether Dr. Corbett should be required to disclose the name of the physician to whom she talked, the trial court held a hearing and necessarily determined that she should not be compelled to disclose the name of the physician, who could possibly be called as an expert witness. Rule 26(b)(4)(B), Ala.R.Civ.P., reads:
 "A party may discover facts known or opinions held by an expert who has been retained, specifically employed or assigned by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial . . . upon a showing of exceptional circumstances under which it *Page 249 
is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."
We conclude that the Cryers have not met the burden of showing that the trial court abused its discretion in this matter or that they will be substantially harmed by not discovering this information.
 V.
Finally, MOG asks this Court to recognize the "self-critical-analysis" privilege for the medical peer-review process. This court mentioned this privilege in Ex parte Life Insurance Co. of Georgia, 663 So.2d 929 (Ala. 1995). Although we recognize "there has been some recognition . . . of a privilege for certain corporate records under the rubric of `self-evaluative reports,'"[3] we elect not to adopt and apply the privilege in this particular case, for at least two reasons: (1) the Legislature has addressed, by statute, the privileges that should apply in the medical peer-review process, and (2) because this Court has appointed an Advisory Committee on Rules of Evidence, we believe that the best procedure for consideration of a rule of evidence that appears to be controversial should be by that Committee or by the Legislature, which has already addressed the issue of confidentiality of certain records maintained by health-care providers.
 VI.
The trial court erred in denying the Cryers' motion to compel MOG and Dr. Corbett to produce the handwritten notes and statements made in preparation for, and at, the March 9, 1998, meeting. Consequently, we grant the petition in part and issue a writ directing the trial court to modify its order so as to grant the Cryers' request for production of (1) Dr. Madonia's handwritten notes made at the March 9, 1998, meeting with Dr. Corbett and (2) Dr. Corbett's handwritten notes made on March 7 and 8, 1998. We deny the Cryers' request that we require Dr. Corbett to identify the name of the physician to whom she talked.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Houston and Brown, JJ., concur.
Harwood, J., concurs specially.
Moore, C.J., and Lyons and Woodall, JJ., concur in the result.
Stuart, J., concurs in part and dissents in part.
See and Johnstone, JJ., recuse themselves.
[1] Rule 26(b)(1), Ala.R.Civ.P., states the general rule of discovery in civil actions, that a party may obtain discovery of all matters, not privileged, that are "reasonably calculated to lead to the discovery of admissible evidence." When a dispute arises over discovery matters, the resolution of the dispute is left to the sound discretion of the trial court.
[2] Ala. Code 1975, § 11-95-7(8) (a corporation operating a public hospital has the power "[t]o select and appoint medical staff and dental staff members and others licensed to practice the healing arts and to delineate and define the privileges granted each such individual"); Ala. Code 1975, § 22-8A-11 (relating to termination of life support); Ala. Code 1975, § 22-21-52 ("The executive committee shall appoint a medical advisory committee of three to five members from the medicalstaffs of the respective hospitals."); Ala. Code 1975, § 22-21-179(10) (relating to the powers of county and municipal hospital authorities and the power "[t]o select and appoint medical staff and dental staff members and others licensed to practice the healing arts and to delineate and define the privileges granted each such individual"); Ala. Code 1975, § 22-21-216 ("final determination of the need for hospitalization of [an indigent patient] shall be made by the medical staff of a participating hospital"); Ala. Code 1975, § 22-21-358 (dealing with medical-staff bylaws and rules); Ala. Code 1975, § 22-52-31 (dealing with decisions to commit persons to Bryce or Searcy Hospitals); Ala. Code 1975, § 22-52-32 (determination whether a person in the custody of Bryce or Searcy Hospital has the capacity to stand trial); Ala. Code 1975, § 22-52-91 (relating to the taking into temporary custody of persons alleged to be mentally ill); Ala. Code 1975, § 34-23-8 (relating to the substitution of drugs or brands of drugs); Ala. Code 1975, §34-23-74 (relating to handling of drugs in a general hospital, skilled nursing homes, and extended-care facilities that do not operate a pharmacy); Ala. Code 1975, § 34-24-58 (the decisions, opinions, etc., of utilization review committees are privileged); Ala. Code 1975, §36-26-64 (including employees of the state facility at Tuscaloosa known as Hale Memorial Hospital under the provisions of the state merit system, but providing that the provisions of the section did not apply "to the medical director or members of the medical staff of the hospital other than nurses, nor to the administrator or business manager of the hospital nor to such custodial and laboring positions as might be designated by the state personnel department"). (Emphasis added.)
[3] See 23 Charles Alan Wright and Kenneth W. Graham, Jr., FederalPractice and Procedure: Evidence § 5431, p. 457 (1999 Supp.), stating:
 "In recent years there has been some recognition by federal courts of a privilege for certain corporate records under the rubric of `self-evaluative reports.' . . . The decisions are divided, and there seems little justification for creating a new privilege if the matter sought to be protected falls outside the required reports privilege."