[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 542 
In the current action by Charles H. Andrews against Francis Powell Enterprises, Inc. ("Francis Powell"), and Meadowbrook Insurance Group, Inc. ("Meadowbrook"), alleging the tort of outrage, Meadowbrook and Francis Powell (hereinafter collectively referred to as "the petitioners") petition this Court for writs of mandamus directing the Clarke Circuit Court to vacate its order compelling the petitioners to produce documents from the claims file of Meadowbrook and from the litigation file of William E. Pipkin, Jr., the petitioners' attorney, which files were originated in regard to Andrews's earlier worker's compensation action against his employer, Francis Powell. We deny the petitions.
 I. Factual Background
The factual allegations of this dispute as of June 23, 2005, when Andrews sued the petitioners alleging the tort of outrage, are set out in the complaint:
 "2. [Meadowbrook] is a Michigan corporation doing business in the state of Alabama that provides risk management services. In that regard, Meadowbrook administers, manages, and provides claim services to the Alabama Forest Production Industry Worker's Compensation Fund, which provides worker's compensation coverage to [Francis Powell].
 ". . . .
 "5. On or about November 3, 2003, [Andrews] was severely and permanently injured by an on-the-job accident while working for [Francis Powell] as a truck driver. . . .
 "6. Following his . . . accident injuring his back and left leg, [Andrews] received medical treatment from numerous doctors, which included surgery [From] the date of his injury and up until May 31, 2005, Meadowbrook . . . paid [Andrews] weekly temporary total disability benefits based on an average weekly wage of $704.65.
 "7. One of the physicians who provided medical treatment to [Andrews] is Dr. Edward Schnitzer, a physical medicine and rehabilitation physician. On May 14, 2004, Dr. Schnitzer released [Andrews] to return to light duty to work with restrictions. At that time, Dr. Schnitzer also referred [Andrews] to see Dr. J. Patrick Couch, a pain specialist, who [Andrews] began seeing soon after his release from Dr. Schnitzer. [Andrews] is currently being treated by Dr. Couch.
 "8. [Andrews] filed a worker's compensation lawsuit against [Francis Powell] on April 30, 2004.
 "9. On or about May 25, 2004, [Andrews] attempted to return to work at [Francis Powell], but was told that the company had no light duty work for him to perform. Thereafter, Meadowbrook continued to pay [Andrews's] temporary total disability benefits.
 "10. Since being released by Dr. Schnitzer in May 2004, [Andrews's] medical condition has continued to deteriorate. [He] continues to suffer from severe pain, has no feeling in his leg below his knee and is being treated for fecal incontinence by Dr. Keith Lloyd in Birmingham. Dr. Couch is treating [Andrews] as his primary physician and *Page 544 
is of the opinion that [he] is not able to return to work. . . .
 "11. On or about April 15, 2005, Denise Arnold, on behalf of . . . Meadowbrook, sent a medical questionnaire to Dr. Schnitzer, who had not treated [Andrews] for over one year, requesting information as to whether [Andrews] had reached maximum medical improvement and inquiring as to any work restrictions. Denise Arnold knew at the time that [Andrews's] primary treating physician was Dr. Couch, not Dr. Schnitzer. Dr. Schnitzer responded stating that [Andrews] had reached maximum medical improvement on May 14, 2004, could return to light duty and listed his restrictions. . . .
 "12. After receiving a response from Dr. Schnitzer dated May 16, 2005, William Pipkin . . ., [Francis Powell's] legal counsel hired by Meadowbrook to defend [Andrews's] . . . worker's compensation lawsuit, sent Bryan Duhé Andrews's counsel in the worker's compensation lawsuit, a letter dated May 31, 2005, stating that [Andrews's] temporary total disability benefits were no longer being provided because Dr. Schnitzer had determined that [Andrews] had `reached maximum medical improvement "`Pipkin also requested a settlement demand from [Andrews].[1]
 "13. Immediately after receiving the letter, Mr. Duhé" contacted Mr. Pipkin and informed him that Dr. Schnitzer had not treated [Andrews] for over a year and that Dr. Couch was [Andrews's] primary treating physician, that Dr. Couch was still treating [Andrews], that Dr. Couch had not released [Andrews] to return to work, and that [Andrews] had not reached maximum medical improvement according to Dr. Couch. Pipkin responded that Meadowbrook had made its decision as to how it was handling the matter; it wanted to settle [Andrews's] worker's compensation claim and was not going to continue temporary total disability benefits."
(Emphasis added.)
The complaint alleged that Francis Powell and Meadowbrook "refuse[d] [Andrews] temporary total disability benefits in an effort to coerce [him] into a settlement of his worker's compensation claim." According to the complaint, Francis Powell and Meadowbrook "committed the tort of outrage by engaging in an unlawful mental and financial assault on [Andrews] with the intent to cause [him] severe emotional distress." (Emphasis added.) Andrews sought compensatory and punitive damages.
Andrews served Meadowbrook with a copy of the complaint, which was accompanied by interrogatories and a request for production of documents. One interrogatory requested "the name, address and position of employment of each and every person involved in the decision to terminate [Andrews's] temporary total disability benefits in May 2005." Andrews also requested the "entire claims file relating to [Andrews's] worker's compensation claim, *Page 545 
including, but not limited to, medical records, medical bills, checks, correspondence, notes, memorandums, adjuster's notes, e-mail transmissions, all notes or entries made on any and every computer, claim notes or any other documents."
In November 2005, Meadowbrook objected to the production of its worker's compensation file, stating:
 "[Meadowbrook] objects to the production of `your entire claims file relating to [Andrews's] worker's compensation claim . . .' Said file contains confidential and privileged documents and communications between [Meadowbrook] and its attorneys. The claims file also contains notations of mental impressions and confidential notations made in anticipation and furtherance [of] litigation. All such documents and notations are privileged."
In response to the interrogatory, Meadowbrook named Pipkin as one of two persons who were "involved in the decision to terminate [Andrews's] temporary total disability benefits in May 2005."
Andrews's counsel sent Meadowbrook's counsel the following letter, dated November 4, 2005:
 "Thank you for responses to [Andrews's] interrogatories and requests for production. As you and I discussed yesterday, it is [Andrews's] position that we are entitled to all correspondence and e-mails exchanged between Meadowbrook and Bill Pipkin since Meadowbrook is using advice of counsel as partial defense. Please let me know if you are firm in this position so that I can file a Motion to Compel to let the judge decide the matter."
(Emphasis added.) According to Andrews, Meadowbrook did not respond to the inquiry regarding its intent to rely on the advice of counsel as a defense.
At that time, Andrews also served Pipkin with a subpoena seeking "[a]ny and all documents contained in [his] file pertaining to [Andrews's worker's compensation case], including, but not limited to, correspondence, notes, memorandums, e-mail transmissions, phone records, medical records and summaries, reports, or any other documents." On November 18, 2005, Andrews filed a motion to compel Meadowbrook to produce its claims file. By correspondence dated that same day from Andrews's counsel to Meadowbrook's counsel, Andrews requested a list, as contemplated by Ala. R. Civ. P. 26(b)(5), identifying all materials that were being withheld under a claim of privilege ("the privilege log"). On December 28, 2005, the trial court granted Andrews's motion. On January 9, 2006, Meadowbrook filed a "Motion for Reconsideration of Motion to Compel and for Protective Order."
In February or March 2006, Francis Powell filed a motion to quash the subpoena to Pipkin. On April 26, 2006, after hearing oral argument, the trial court granted Meadowbrook's relief and stayed all pending production motions until the worker's compensation litigation was concluded. A final judgment was entered in that case on February 6, 2007.
Subsequently, on March 13, 2007, Andrews filed another motion, seeking an order compelling Meadowbrook to produce its claims file and compelling Pipkin to produce Francis Powell's litigation file. On April 26, 2007, the trial court scheduled oral argument on the second motion to compel for June 25, 2007. However, on May 8, 2007, the trial judge granted the motion to compel and ordered compliance within 30 days.
On May 16, 2007, Meadowbrook filed a motion for reconsideration "reassert[ing]" the arguments it "presented in its Motion for Reconsideration of Motion to Compel *Page 546 
and for Protective Order, filed . . . January 9, 2006, and in response to [Andrews's] first Motion to Compel." Similarly, on May 22, 2007, Pipkin filed a "Renewed Objection to Alias Civil Subpoena for Production of Documents, Motion to Quash Subpoena and Motion to Reconsider," which expressly adopted "all responses and objections filed by Meadowbrook." On June 22, 2007, Andrews filed a "Response and Objection to Meadowbrook's and Pipkin's Motion to Reconsider the Court's Order Granting Plaintiffs Motion to Compel."
The trial court entertained those motions at a hearing on June 25, 2007, as originally scheduled. That day, the court entered an order, stating: "[Andrews's] response and objection to Meadowbrook's and Pipkin's motion to reconsider the court's order granting [Andrews's] motion to compel filed by [Andrews] is hereby DENIED." However, on July 12, 2007, the trial court entered an "Amended Order," stating: "[Andrews's] response and objection to Defendants' motion to reconsider the court's order granting [Andrews's] motion to compel is hereby sustained and Defendants' motion to reconsider is hereby denied." Meadowbrook and Francis Powell filed these petitions for the writ of mandamus on July 18, 2007, and August 3, 2007, respectively.
Preliminarily, Andrews contends that the petitions were not filed within 42 days of the May 8 order and that the petitioners did not move for a protective order in response to the May 8 order. For either reason, Andrews insists, the petitions are untimely. We disagree that the petitions are untimely.
It is true that a petition for a writ of mandamus must ordinarily be filed within 42 days of the challenged order. SeeEx parte Troutman Sanders, LLP, 866 So.2d 547
(Ala. 2003) (a "motion to reconsider" an interlocutory order does not toll the period in which to file a petition for a writ of mandamus); see also Ala. R.App. P. 21(a). Moreover, a petition challenging an order compelling discovery is timely only if (1) a protective order is sought, pursuant to Ala. R. Civ. P. 26(c), within the time set for compliance with the order, Ex parte Orkin, Inc., 960 So.2d 635, 640
n. 5 (Ala. 2006) (citing with approval Wang v. Hsu,919 F.2d 130, 131 (10th Cir. 1990)), and (2) the mandamus petition is filed no more than 42 days after the denial of the protective order. 960 So.2d at 640.
In this case, however, each petitioner sought a protective order within 30 days of the May 8, 2007, order. Specifically, on May 16, 2007, Meadowbrook filed its motion for reconsideration, which expressly "reasser[ed] the legal arguments and case precedent . . . presented in its [original motion for protective order filed on January 9, 2006]." Similarly, on May 22, 2007, Pipkin filed a "renewed objection to the . . . subpoena," which expressly "adopt[ed] all responses and objections filed by Meadowbrook by reference, as if set forth [there]in." Those motions were not patently denied until July 12, 2007, when the trial court entered its "Amended Order." Indeed, the May 8, 2007, order was essentially vacated,sub silentio, when the petitioners' motions were argued on June 25, 2007, in lieu of complying with the order. Additionally, the order entered on June 25 actuallyfavored the petitioners. It was not until July 12, 2007, that the trial court entered an order expressly adverse to the petitioners. Consequently, the petitions filed on July 18 and August 3 are timely.
 II. Discussion
At issue in this case, as Andrews concedes, is his right to "(1) [the] adjuster's *Page 547 
claims notes made after Andrews's worker's compensation case was filed on April 30, 2004, up to the filing of this case, and (2) correspondence and e-mails exchanged between Meadowbrook and Pipkin" within that time period pertaining to the decision to terminate Andrews's worker's compensation benefits. Andrews's brief, at 15. The petitioners contend that the claims notes are protected under the work-product doctrine and that the correspondence is protected under the attorney-client privilege.
 A. Standard of Review "Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 `So.2d 859, 862 (Ala. 1991). Accordingly, mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions."
Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813
(Ala. 2003).
Moreover, this Court will review by mandamus only those discovery matters involving (a) the disregard of a privilege, (b) the ordered production of "patently irrelevant or duplicative documents," (c) orders effectively eviscerating "a party's entire action or defense," and (d) orders denying a party the opportunity to make a record sufficient for appellate review of the discovery issue. 872 So.2d at 813-14. The order challenged in this case involving alleged work product and the attorney-client privilege is reviewable under category (a).
 B. Work Product
According to the petitioners, "[t]he documents requested by Andrews fall squarely within the protection provided by [Ala. R. Civ. P. 26(b)(3)], as Andrews is seeking information about `the mental impressions, conclusions, opinions, or legal theories' surrounding the decision to terminate [his] worker's compensation benefits." Francis Powell's petition, at 16. Rule 26(b)(3), Ala. R. Civ. P., provides, in pertinent part:
 "Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
(Emphasis added.)
Andrews contends that the petitioners have "failed to meet [their] burden of [showing] that the adjuster's notes are work product." Andrews's brief, at 17. This is so, because, he argues, the petitioners have presented no evidence indicating that the claims notes, or anything else in *Page 548 
their files, were "prepared in anticipation of litigation or for trial." We agree.
"`Under Rule 26(b)(3), the party objecting to discovery bears the burden of establishing the elements of the work-product exception.'" Ex parte Cummings, 776 So.2d 771, 774
(Ala. 2000) (quoting Ex parte Garrick, 642 So.2d 951,952-53 (Ala. 1994)). Those elements are "that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." Johnson v. Gmeinder,191 F.R.D. 638, 643 (D.Kan. 2000); see also 8 C. Wright, A. Miller R. Marcus, Federal Practice and Procedure
§ 2024, at 336 (1994).
Once "`the parties are "at issue as to whether the document[s] sought [were], in fact, prepared in anticipation of litigation,"'" the objecting party must make "`[a]nevidentiary showing.'" Ex parte Cummings,776 So.2d at 774 (quoting Ex parte State Farm Auto. Ins.Co., 761 So.2d 1000, 1002-03 (Ala. 2000), quoting in turnEx parte Garrick, 642 So.2d at 953 (emphasis added)). It is Andrews's position — and the petitioners do not deny — that Andrews's motions to compel placed the parties "at issue" as to whether the claims file was prepared in anticipation of litigation.
In such a case, "[a] `blanket claim' as to the applicability of the work product doctrine does not satisfy the [objecting parties'] burden of proof." Disidore v. Mail Contractors ofAmerica, Inc., 196 F.R.D. 410, 413 (D.Kan. 2000). "`That burden cannot be discharged by mere conclusory or ipse dixit assertions.'" Id. (quoting McCoo v. Denny's,Inc., 192 F.R.D. 675, 680 (D.Kan. 2000)). Where the record contains "no affidavits, memorandums, or reports to support the [objecting parties' contentions]," the court can only "speculate" as to whether the materials "fall under the work-product exception." Ex parte, Fuller,600 So.2d 214, 216 (Ala. 1992). See also Nutmeg Ins. Co. v. Atwell,Vogel Sterling, a Div. of Equifax Servs., Inc.,120 F.R.D. 504, 510 (W.D.La. 1988) ("A clear showing must be made which sets forth the items or categories objected to and the reason for that objection. . . . Accordingly, the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege.").
In that connection, Francis Powell argues that the "[p]etitioners need not prove that there was any `anticipation' of litigation, because litigation had already commenced when these documents were created." Francis Powell's reply brief, at 17. We disagree.
"Where an insurer has a separate and independent contractual duty to investigate a claim, the insurer must satisfy the requirements of Rule 26(b)(3)[, Ala. R. Civ. P.,] . . . by showing more than simply when a document was prepared. The insurer . . . must show why each document was prepared and how it was used." Ex parte State Farm Mut.Auto. Ins. Co., 761 So.2d 1000, 1004 (Ala. 2000) (Lyons, J., concurring specially) (emphasis added). There is a "requirement [in] Rule 26(b)(3) of a causalrelationship between the impending litigation and the production or use of the documents." Id. The inquiry "`"should be whether, in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtainedbecause of the prospect of litigation."'"761 So.2d at 1002 (opinion of the Court) (quoting Sims v. Knollwood ParkHosp., 511 So.2d 154, 157 (Ala. 1987), quoting *Page 549 
in turn Brinks Mfg. Co. v. National Presto Indus.,Inc., 709 F.2d 1109, 1119 (7th Cir. 1983)). Thus, "thepurpose for which a party created a document is the fundamental requirement of the Rule, and [regardless of whether] litigation is reasonably anticipated, certain, oreven underway, a court must still undertake an examination of why a document was produced."Harper v. Auto-Owners Ins. Co. 138 F.R.D. 655, 661
(S.D.Ind. 1991) (some emphasis added). See also Stout v.Illinois Farmers Ins. Co., 150 F.R.D. 594, 597
(S.D.Ind. 1993); Schmidt v. California State Auto.Ass'n, 127 F.R.D. 182, 184 (D.Nev. 1989) ("The majority of cases that have dealt with the issue of whether investigative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary.").
In this case, the petitioners had an independent duty to handle and administer Andrews's worker's compensation claim. Consequently, they cannot satisfy Rule 26(b)(3) by a blanket objection to discovery on the basis that the materials sought are work product.
Meadowbrook also contends that it cannot comply with the requirement that it present "evidence that the contents of the adjuster's notes fall within the . . . definition of work product privilege. . . . without disclosing the communication itself, which is precisely what is sought to be protected." Meadowbrook's reply brief, at 11-12. Again, we disagree. Rule 26(b)(5) states, in pertinent part:
 "When a party withholds information otherwise discoverable under these rules on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and, upon written request by any other party, shall be supported by a description of the nature of the documents, communications, or things not produced sufficient to enable the demanding party to contest the claim."
(Emphasis added.)[2]
Compliance with Rule 26 does not obviate the protection at issue. As the federal counterpart to Rule 26 provides:
 "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
 "(i) expressly make the claim; and
 "(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."
Fed.R.Civ.P. 26(b)(5)(A). In other words, these rules contemplate that an objecting party's showing need not "reveal[] information itself privileged or protected," but must include enough information regarding each document for which the protection is claimed to "enable the court to *Page 550 
determine" the validity of the objections. That has not been done in this case.
Here, although Meadowbrook submitted a privilege log listing 56 documents, there is no information — of an evidentiary nature or otherwise — regarding the circumstances under which any of those documents was generated or as to which privilege allegedly applies to which document. On the contrary, as to the claims notes, for example, the only notation on the log as to some 16 "claim note pad[s]" withheld is that they were allegedly created after Andrews filed his worker's compensation action. As noted above, this ground islegally insufficient, and the record contains nothing of an evidentiary nature that would allow the court to go beyond pure speculation as to whether the materials "fall under the work-product exception." Ex parte Fuller,600 So.2d at 216. Accordingly, the trial court did not exceed its discretion in ordering production of the "adjuster's claims notes made after Andrews's worker's compensation case was filed on April 30, 2004, up to the filing of this case."
 C. Attorney-client Privilege
It is undisputed that the "correspondence and e-mails exchanged between Meadowbrook and Pipkin, [Francis] Powell's worker's compensation lawyer hired by Meadowbrook," are subject to the attorney-client privilege. "The general rule is that an attorney cannot disclose the advice he gave to his client about matters concerning which he was consulted professionally, nor can the client be required to divulge the advice that his attorney gave him." Ex parte Great American Surplus LinesIns. Co., 540 So.2d 1357, 1358 (Ala. 1989).
However, "the attorney-client privilege `may bewaived, either directly or [indirectly], by the client.'"540 So.2d at 1359 (quoting Swain v. Terry,454 So.2d 948, 954 (Ala. 1984) (emphasis added)). An indirect waiver may occur where "`the privileged communication is injected asan issue in the case by the party which enjoys its protection.'" Ex parte Malone Freight Lines, Inc.,492 So.2d 1301, 1303 (Ala. 1986) (quoting Garfinkle v. ArcataNat'l Corp., 64 F.R.D. 688, 689 (S.D.N.Y. 1974) (emphasis added)); see also Rhone-Poulenc Rorer Inc. v. Home Indem.Co., 32 F.3d 851, 863 (3d Cir. 1994) ("A defendant may . . . waive the privilege by asserting reliance on the advice of counsel as an affirmative defense."). Andrews argues that the petitioners have indirectly waived the attorney-client privilege by injecting reliance on the advice of Pipkin into their defense to his tort-of-outrage claim.
A party asserting that he relied on the advice of counsel must show "that he: (1) made a complete disclosure of the facts to his attorney; (2) requested the attorney's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied upon the advice in good faith."Powers v. Goodwin, 174 W.Va. 287, 291, 324 S.E.2d 701,705 (1984); see also Delchamps, Inc. v. Bryant,738 So.2d 824, 835 (Ala. 1999).
The petitioners argue that no waiver occurred. They insist that Meadowbrook's response to the interrogatory naming Pipkin as one of the two persons who were "involved in the decision to terminate [Andrews's] temporary total disability benefits in May 2005" did not suffice to waive the attorney-client privilege. With that argument, we agree.
The mere admission "that one relied on legal advice in making a legal decision [does not] put the communications relating to the advice at issue." Metropolitan Life Ins. Co. v. AetnaCas. Sur. Co., 249 Conn. 36, 54, 730 A.2d 51, 61
(1999). Instead, the "`determination turns on *Page 551 whether the actual content of the attorney-clientcommunication has been placed in issue such that theinformation is actually required for the truthful resolution ofthe issues raised in the controversy.'" Ex parte State FarmFire Cos. Co., 794 So.2d 368, 375 (Ala. 2001) (quoting Mortgage Guarantee Title Co. v. Cunha,745 A.2d 156, 160 (R.I. 2000)). Where advice of counsel is asserted in defense to culpability for a decision, the "`[p]laintiff is entitled to all relevant documents bearing on the decision.'" Ex parte Malone Freight Lines, Inc.,492 So.2d at 1303 (quoting Garfinkle v. Arcata Nat'lCorp., 64 F.R.D. at 690).
The petitioners' problem here is that waiver is not predicated upon Meadowbrook's interrogatory answer, but on evidence that the petitioners affirmatively intend to assert the advice of counsel in defense of Andrews's tort-of-outrage claim. In his correspondence of November 4, 2005, Andrews expressed his understanding that Meadowbrook intended to rely, in part, on Pipkin's advice, and he asked Meadowbrook to confirm or deny that fact. Meadowbrook did neither. Moreover, in his brief in response to these petitions for the writ of mandamus, Andrews invited the petitioners to disclaim reliance on Pipkin's advice. Specifically, Andrews stated: "[I]t is now time as it was before the trial court for Meadowbrook to jump off the fence and declare whether advice of counsel will be asserted as a defense or not in this case." Andrews's brief, at 24 (emphasis added). In their reply briefs, neitherpetitioner responded to the invitation. Consistent with their burden to show that the trial court exceeded its discretion in compelling production, the petitioners cannot stand mute as to whether the advice of counsel is at issue in this action. For all that appears, Pipkin's advice is
at issue in the claims against both petitioners, and the petitioners are not entitled to use the attorney-client privilege "as both a sword and a shield." Ex parte MaloneFreight Lines, 492 So.2d at 1303.
 III. Conclusion
For these reasons, the petitioners have failed to demonstrate that the trial court exceeded its discretion in compelling production of the adjuster's claims notes and the correspondence between Meadowbrook and Pipkin. Consequently, the petitions are denied.
1061493 — PETITION DENIED.
1061592 — PETITION DENIED.
COBB, C.J., and LYONS, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
SEE, J., concurs in the result.
[1] According to Meadowbrook, Pipkin has served, and continues to serve, as legal counsel for both it andFrancis Powell "with regard to the worker's compensation case." Meadowbrook's petition, at 1. Pipkin does not represent Francis Powell or Meadowbrook in the trial court in the underlying tort-of-outrage case. According to Francis Powell, Meadowbrook is a "service company for a self-insurer," namely, Francis Powell, and, consequently, is also an "employer," as that term is defined in Ala. Code 1975, § 25-5-1(4). Francis Powell's petition, at 14. Francis Powell gave Meadowbrook "authority to obtain professional legal services or to act on legal advice rendered on behalf of [Francis Powell]," within the meaning of Ala. R. Evid. 502(a)(2). Francis Powell's petition, at 15.
[2] A similar provision is contained in Ala. R. Civ. P. 45(d)(2), which deals with discovery from nonparties. That section provides:
 "When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."