WOODALL, Justice.
 

 Macon County Greyhound Park, Inc. (“MCGP”), petitions this Court for a writ of mandamus directing the Macon Circuit Court to vacate an order compelling MCGP to produce statements from two of its employees in an action filed against it by Sherry Knowles. We grant the petition and issue the writ.
 

 MCGP operates a gaming facility known as VictoryLand, where Knowles is employed. On May 2, 2006, Knowles was playing an electronic bingo game at Victo-ryLand. Knowles alleges that while playing the game she hit a jackpot on the machine worth $41,800,000. According to
 
 *857
 
 her, the machine did not appear to be malfunctioning when the jackpot was indicated.
 

 Shortly after the apparent jackpot, James Graham and Chris Fogarty, MCGP employees, approached Knowles. She says that they informed her that the jackpot was “not a valid win,” because, according to them, the machine had “malfunctioned.” The machine was “cleared,” and Knowles continued to play the same machine. Within a few minutes, she won a jackpot of $2,505, which MCGP paid. Knowles made no complaint concerning the earlier apparent jackpot and MCGP’s failure to pay the winnings, and the other employees prepared no report of the event or their response to it.
 

 On May 12, 2006, MCGP received a letter from an attorney representing Knowles. The letter stated in its entirety:
 

 “Please be advised that I represent Sherry Knowles. Please preserve all evidence relating to her winnings on or about April 24, 2006 or April 25, 2006.
 
 [1]
 
 This would include video surveillance, evidence from computer memory and any other evidence of any kind. Also, we ask that there be no action undertaken on the machine in question that would alter or destroy any record of events occurring on April 24th or April 25th.”
 

 The letter was seen that same day by Stanley Hubbard, the gaming director at VictoryLand. He, at that time, directed Graham and Fogarty to prepare written statements concerning their knowledge of the May 2 events involving Knowles. The employees prepared the statements on “incident report” forms and submitted them to Hubbard.
 

 On May 16, 2006, Knowles sued MCGP. In substance, she claimed that she had been wrongfully deprived of the jackpot win of $41,800,000 and that she is entitled to recover compensatory and punitive damages. During discovery, Knowles learned of the statements prepared by Graham and Fogarty. She requested copies of those statements, but MCGP objected to their production, arguing that the statements were prepared in anticipation of litigation and, therefore, that they qualify as work-product. However, the trial court ordered the production of the statements, and MCGP then petitioned this Court for relief.
 

 “The order challenged in this case involving alleged work product ... is reviewable [by a petition for a writ of mandamus].”
 
 Ex parte Meadowbrook Ins. Group, Inc.,
 
 987 So.2d 540, 547 (Ala.2007). However, “ ‘this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion.’ ”
 
 Id.
 
 at 547 (quoting
 
 Ex parte Ocwen Fed. Bank, FSB,
 
 872 So.2d 810, 813 (Ala.2003)).
 

 MCGP insists that “the employee statements here are protected from disclosure by the work-product privilege, as they were prepared in anticipation of litigation.” Petition, at 19-20. Knowles, on the other hand, argues that MCGP “has failed to carry its burden of establishing that the [statements] were done in anticipation of litigation.” Knowles’s brief, at 19. We agree with MCGP.
 

 “Documents and tangible things otherwise discoverable, which are prepared in anticipation of litigation or trial by or for another party or by or for that other party’s representative, are protected as work product and are not otherwise discoverable. See Rule 26(b)(3), Ala. R.
 
 *858
 
 Civ. P.”
 
 Ex parte Flowers,
 
 991 So.2d 218, 221 (Ala.2008) (footnote omitted). In this case, MCGP objected to discovery, claiming that Graham’s and Fogarty’s statements are work-product, and Knowles sought an order compelling their production. At that time, MCGP was required to make an evidentiary showing of the elements of the work-product exception. See
 
 Meadowbrook,
 
 987 So.2d at 548. Those elements are “ ‘ “(1) [that] the materials sought to be protected are documents or tangible things; (2) [that] they were prepared in anticipation of litigation or for trial; and (3) [that] they were prepared by or for a party or a representative of that party.” ’ ”
 
 Id.
 
 at 221 (quoting
 
 Johnson v. Gmeinder,
 
 191 F.R.D. 638, 643 (D.Kan. 2000)). Statements of witnesses taken in anticipation of litigation are protected by Rule 26(b)(3), Ala. R. Civ. P.
 
 Ex parte Norfolk Southern Ry.,
 
 897 So.2d 290, 292-95 (Ala.2004). “Of course, the involvement of an attorney as the person taking the statement is not a prerequisite to the qualification of the statement as work-product.”
 
 Id.
 
 at 294. However, it must be shown that “it was reasonable for the [objecting party] to [assume], in light of the circumstances [existing when the statements were taken], that litigation could be expected.”
 
 Ex paRe Alabama Dep’t of Youth Servs.,
 
 927 So.2d 805, 808 (Ala. 2005).
 

 In support of its work-product claim, MCGP submitted an affidavit from Stanley Hubbard, the management employee who directed Graham and Fogarty to prepare their statements regarding the events of May 2. According to Hubbard, on May 2, Graham telephoned him “and informed [him] that the credit meter on a machine being played by Sherry Knowles was rolling up far in excess of the credits which can be won on that machine.” Hubbard “instructed ... Graham to notify the machine vendor technician.” He did not request that any statements be prepared concerning the incident. According to Hubbard, Knowles made no complaint regarding the events of May 2, and, “[i]f a patron does not make a complaint, [MCGP] employees do not complete an ‘incident report’ in the normal course of business.”
 

 Hubbard’s affidavit indicates that his perception of the situation changed on May 12 when he saw the letter from Knowles’s attorney. He says that after he saw the letter he “believed that [Knowles] was about to file a lawsuit” and “expect[ed] a lawsuit to be imminent.” On that same date, he instructed Graham and Fogarty to prepare the statements at issue, “based upon [his] belief that ... Knowles was about to file a lawsuit against Victory-Land.” In light of the significant amount of the purported jackpot, as well as the attorney’s request that “all evidence” be preserved, it was certainly reasonable for Hubbard to conclude that litigation could be expected. Consequently, MCGP’s claim that the statements are work-product is well-founded.
 

 Knowles characterizes her attorney's letter as “a nonthreatening letter requesting nothing more than preservation of information relative to her jackpot.” Knowles’s brief, at 6. According to Knowles, the letter “offered no threat of litigation.”
 
 Id.
 
 at 17. Presumably, she would have this Court hold that it was unreasonable for Hubbard to conclude that she was planning to institute legal action regarding “her jackpot.” However, such a holding would be untenable. As Hubbard reasonably concluded, legal action was likely, and, in fact, a complaint was filed only four days after the letter was received.
 

 Knowles argues that this Court’s decision in
 
 Ex paRe Cryer,
 
 814 So.2d 239 (Ala.2001), supports her argument that the employees’ statements are not work-product. In
 
 Cryer,
 
 we held that a defendant in
 

 
 *859
 
 a medical-malpractice action “ha[d] not satisfied her burden of establishing that her notes [concerning the treatment of her patients] were prepared in anticipation of litigation.” 814 So.2d at 248. However, unlike the situation in this case, when the doctor in
 
 Cryer
 
 “made her notes ..., [she] did not know that [the plaintiffs] had hired an attorney.” 814 So.2d at 247. Although the plaintiffs’ attorney had written a letter requesting medical records, the doctor’s affidavit, unlike Hubbard’s affidavit, did not aver that the doctor was aware of the letter when she prepared her notes. Stated simply, MCGP carried its burden of proof through an adequate affidavit, while the defendant in
 
 Cryer
 
 did not.
 

 “Even if the work-product privilege applies, Rule 26(b)(3), Ala. R. Civ. P., recognizes an exception when the party requesting the material can show substantial need coupled with undue hardship.”
 
 Ex parte Norfolk Southern Ry.,
 
 897 So.2d at 295. However, Knowles does not argue that this exception applies here. Indeed, she has already deposed James Graham and, when MCGP filed its petition for a writ of mandamus, she had scheduled the deposition of Chris Fogarty.
 

 For the foregoing reasons, we hold that the trial court clearly exceeded its discretion when it ordered the production of the written statements prepared by Graham and Fogarty at Hubbard’s request. MCGP is clearly entitled to an order directing the trial court to vacate its discovery order. Thus, we grant the petition and issue the writ.
 

 PETITION GRANTED; WRIT ISSUED.
 

 COBB, C.J., and SEE, SMITH, and PARKER, JJ., concur.
 

 [1]
 

 1. The purported jackpot actually occurred on May 2, 2006, one week after April 25, 2006. However, neither party makes any issue of the discrepancy in the attorney's letter concerning the date.