The Water Works and Sewer Board of the City of Birmingham (the "Water Works") petitions for a writ of mandamus compelling Judge William E. Hereford, of the St. Clair Circuit Court, to vacate his order requiring production of certain documents.
A petition for the writ of mandamus is the proper means for obtaining review of the question "whether a trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders." Ex parteCompass Bank, 686 So.2d 1135, 1137 (Ala. 1996).
On May 9, 1997, the Water Works filed a declaratory judgment action in the Jefferson Circuit Court, seeking a declaration that expenditures totalling approximately $806,000 made by it to over 100 separate charitable entities between October 1993 and October 1996 were within its corporate powers, were in furtherance of a public purpose, and provided a corporate benefit. On July 1, 1997, the Jefferson Circuit Court granted motions to intervene filed by the attorney general and by Water Works customer Larry Wallace.[1] The attorney general and Wallace were realigned as plaintiffs against the Water Works. The court transferred the case to the St. Clair Circuit Court.
On February 12, 1998, the Water Works and the attorney general moved for a consent order, attempting to settle the dispute between the Water Works and the attorney general. On February, 20, 1998, Wallace requested production of documents from the Water Works and the attorney general, asking for
 "all correspondence, internal memorandums, notes, inclusive of all electronically maintained or generated or transmitted, mail, or records, reports, memorandums, or other similar materials existing in any form or medium which reference or relate to any communications, and/or negotiations between [Water Works] (and any of its agents or representatives, including attorneys thereof) and the Office of the Attorney *Page 43 
General (and any agent, representative, or attorney thereof) regarding the subject matter of this action and/or the terms, conditions, or subject matter of the proposed settlement."
The Water Works and the attorney general objected to this discovery request. Following a hearing, the court entered an order denying the motion for a consent order and ordered the Water Works and the attorney general to immediately produce the documents requested by Wallace. The court also ordered that, "To the extent either the Attorney General or [the Water Works] contend[s] that the request includes materials within the attorney-client privilege, the producing parties are required to submit a privilege log identifying all documents withheld from production."
On May 12, 1998, the Water Works filed a "motion to reconsider," along with a list of documents that it asserted were privileged. The attorney general did not join the motion to reconsider. The trial court denied the Water Works' motion to reconsider, holding that the communications between the Water Works and the attorney general were not privileged under either the work-product doctrine or the attorney-client privilege. The court noted that the attorney general was not then objecting to the production of documents in his file, but had not produced them yet.
In its order, the trial court stated:
 "Wallace contends in his Motion to Compel that the documents are relevant and could lead to the discovery of admissible evidence regarding the propriety of the entry of a consent order, including whether the negotiations between the Water Works] and the Attorney General were in good faith or the product of collusion, and whether the consent order should be entered in light of the prior pending action filed by Wallace.
 "It should be plain to both [the Water Works] and the Attorney General that communications between them are not subject to the attorney-client privilege nor the attorney work product protection. These parties are supposedly in direct conflict with one another; in fact, the Jefferson County Circuit Court, before transferring this action to St. Clair County, realigned the Attorney General as a plaintiff against [the Water Works] which was realigned as a defendant. The work product protection has been extended to include communications among parties having a `common interest.' This doctrine protects the sharing of information among parties which have a common defense or claim. However, the Attorney General and [the Water Works] take a seriously inconsistent position; on the one hand, claiming that they are adversaries who have reached a settlement in the best interest of the ratepayers and on the other hand, sharing a common interest or purpose. In either case, the Court finds that communications between these parties are not privileged under either the work product doctrine or the attorney-client privilege.
 "The claim that these privileges extend to communications against supposed adversaries is further undermined by the public character of the parties asserting the claims and the nature of the dispute. The consent order is an apparent effort to address the issue of whether [the Water Works] breached its duties to its ratepayers in paying over $800,000 of public monies to various charitable organizations. [The Water Works] maintains that these negotiations must be kept secret and the Attorney General, by continuing to refuse to produce the records despite this Court's Order, apparently agrees. The Court can find no reason why these public entities should be permitted to maintain the secrecy of their negotiations under the circumstance presented here.
 "Finally, not only has the Attorney General not joined in the Motion to Reconsider filed by [the Water Works], but [he] has reaffirmed his intention to produce the disputed documents that are maintained in his file. The Attorney General is reminded of this Court's Order of May 1, 1998 directing the immediate production of the records. Given . . . representations in Court [by counsel for the office of the Attorney General] that the Attorney General does not object to the production of *Page 44 
the documents, further delay in the production of the records is not warranted."
In general, a party may obtain discovery of all matters, not privileged, that are reasonably calculated to lead to the discovery of admissible evidence. Rule 26 (b)(1), Ala. R. Civ. P. Rule 26 vests in the trial court broad discretion to control the discovery process and to prevent its abuse by either party, but that discretion is not unbridled.
The issue is whether the trial court abused its discretion in ordering the disclosure of the communications between the Water Works and the attorney general. Wallace argues that the communications go to the heart of the question whether the settlement was collusive and should be rejected by the court. Wallace contends that the documents may contain facts and/or admissions made during the settlement negotiations between the Water Works and the attorney general "which bear on the Water Works Board's liability." Wallace argues that if the Water Works and the attorney general can submit a consent order that could end all potential liability on the part of the Water Works, and which would likely be relied upon at a later date if it were approved, then the facts and representations upon which that proposed consent order are based should be discoverable.
The Water Works argues that the communications are not discoverable, under the work-product doctrine. The protection of the work-product doctrine attaches to documents and other items produced by a party in anticipation of litigation. Rule 26 (b)(3). The test to determine whether a document constitutes work product is whether it was prepared by the party or his representative in anticipation of litigation. The party seeking discovery must show that he has a substantial need of the materials and is unable, without undue hardship, to obtain by other means the substantial equivalent of the materials. Rule 26 (b)(3); Ex parte Garrick, 642 So.2d 951 (Ala. 1994). The rule protects against revealing an attorney's mental impressions, conclusions, opinions, and legal theories. Hickman v. Taylor,329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Ex parte AlabamaPower Co., 280 Ala. 586, 196 So.2d 702 (1967). The Water Works also contends that the communications are privileged under the attorney-client relationship.
We note that under Rule 408, Ala. R. Evid., evidence of a compromise or offer to compromise "is not admissible to prove liability for or invalidity of the claim or its amount." Rule 408 also provides: "Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." The Advisory Committee Notes to Rule 408 state, "Nothing in Rule 408 is intended to protect otherwise discoverable evidence simply because a party has offered such evidence during compromise negotiations."
Before the Rules of Evidence became effective, on January 1, 1996, we had held that certain conversations in connection with settlement negotiations were inadmissible at trial. Super ValuStores, Inc. v. Peterson, 506 So.2d 317 (Ala. 1987). In Super Valu, the letters and conversations were found to be integral parts of the parties' negotiations. "The rationale and public policy underlying the privileged nature of settlement negotiations is the encouragement of extrajudicial settlement of disputes." 506 So.2d 317, 324.
The Water Works argues that this Court should apply the rationale of Bottaro v. Hatton Associates, 96 F.R.D. 158, 160
(E.D.N.Y. 1982), wherein the federal district court held that a party seeking discovery of documents relating to settlement negotiations must make a "particularized showing" that the requested documents are relevant and likely to lead to the discovery of admissible evidence. In Bottaro, the court stated that Rule 408, Fed.R. Evid.,[2] would not immunize documents or factual admissions merely because they were exchanged in the course of negotiating a settlement, if they were independently admissible either as preexisting documents or were provable by evidence other than *Page 45 
conduct or statements that make up compromise negotiations.
Following Super Valu and Bottaro, we conclude that the communications sought by Wallace are not discoverable. Wallace has not made a particularized showing that the communications would lead to the discovery of admissible evidence. From materials in the petition, it appears that the communications were made as part of the settlement process and were not preexisting. Moreover, Wallace's reason for wanting discovery of the settlement communications is to see if the Water Works conceded liability, which he must prove by evidence other than conduct or statements that make up the negotiations. Additionally, we cannot say, merely because a municipal board and the attorney general agree to a settlement, that the settlement is collusive.
The petition for writ of mandamus is granted.
WRIT GRANTED.
HOOPER, C.J., and MADDOX, SHORES, and SEE, JJ., concur.
[1] Wallace sued the Water Works in St. Clair County, alleging conversion, fraudulent suppression, breach of fiduciary duty, and "felonious injury" in the expenditure of the funds to the charities.
[2] The Federal Rule is substantially the same as Rule 408, Ala. R. Evid.