991 So.2d 218 (2008)
Ex parte Roshell H. FLOWERS, individually and d/b/a Roshell's Café and Deli.
(In re Kimberly R. Sanders, individually and as personal representative of the estate of Marilyn Ruth Smith Lancaster
v.
Roshell H. Flowers, individually and d/b/a Roshell's Café and Deli, a corporation; et al.).
1061201.
Supreme Court of Alabama.
March 28, 2008.
*219 Winston R. Grow of Patridge Smith, P.C., Mobile, for petitioner.
Billy C. Bedsole, Mobile, for respondent.
SEE, Justice.
Roshell H. Flowers, individually and doing business as Roshell's Café and Deli (collectively "Flowers"), petitions this Court for the writ of mandamus directing the Mobile Circuit Court to vacate its order compelling Flowers to produce certain statements taken by Flowers's insurance carrier, which Flowers asserts are protected by the work-product privilege. We grant the petition and issue the writ.

Factual Background and Procedural History
Kimberly R. Sanders alleges that as she and her mother, Marilyn Ruth Smith Lancaster, were leaving Flowers's restaurant, "a deluge of water from the defective roof of the restaurant" poured down on Lancaster, knocking her down and causing her to break both her legs. It is further alleged that Lancaster was subsequently confined to a hospital and that she eventually died as a result of her injuries. Sanders, as personal representative of Lancaster's estate, sued Flowers, alleging that Flowers had negligently and wantonly operated, maintained, managed, controlled, and/or failed to maintain the premises of the restaurant.
During the course of discovery, Sanders requested that Flowers produce the statements of Roshell Flowers and witnesses Mack Flowers, Jr., and Donna Flowers that were taken by Flowers's insurance carrier regarding the accident. Flowers did not respond to the request, and Sanders moved the trial court to compel Flowers to produce the statements. Flowers opposed the motion to compel, claiming that the statements were taken in anticipation of litigation and that they were therefore protected as work product. In support of her opposition to Sanders's motion to compel, Flowers presented an affidavit from her insurance adjuster, Barbara Barrett. Barrett stated in her affidavit that Flowers forwarded to her a letter from *220 Lancaster's attorney, written while Lancaster was still alive, that read:
"This is to advise that I represent Marilyn Lancaster on an action or cause of action which she may have arising out of an accident on April 6, 2005, at your restaurant, when she suffered severe injuries for which she was hospitalized and is still being treated.
"I would request that if you have liability insurance to cover you in this matter that you turn my letter over to them so that they can contact me regarding some possible resolution to this claim.
"If you do not have liability insurance, I would appreciate you contacting me so that we can discuss this matter."
Petition, Exhibit 5. Barrett stated that she thereafter initiated an investigation, which she believed was in anticipation of litigation. Barrett stated that she anticipated that there would be litigation because "[b]ased on [her] experience and training as a claims agent, when a fatality or severe injury occurs in a premises liability action and the claimant has retained counsel, there is likely to be litigation regarding the accident." Petition, Exhibit 5. As part of her investigation she interviewed and took statements from Roshell Flowers, Mack Flowers, Jr., and Donna Flowers.
The trial court apparently found that the statements Barrett took from Roshell Flowers, Mack Flowers, Jr., and Donna Flowers were not taken in anticipation of litigation, and it granted Sanders's motion to compel. Flowers then petitioned this Court for the writ of mandamus and an immediate stay of all proceedings. We stayed the proceedings pending the disposition of Flowers's petition for the writ of mandamus. Sanders moved this Court to rescind its order staying all proceedings, and we issued a new order staying only the trial court's order compelling Flowers to produce the statements. We now issue the writ of mandamus directing the trial court to vacate its order compelling Flowers to produce the statements.

Standard of Review
"A petition for the writ of mandamus is the proper means for obtaining review of the question `whether a trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders.'" Ex parte Water Works & Sewer Bd. of Birmingham, 723 So.2d 41, 42 (Ala.1998) (quoting Ex parte Compass Bank, 686 So.2d 1135, 1137 (Ala.1996)). "Mandamus is an extraordinary remedy and will be granted only when there is `(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.'" Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134, 1136 (Ala.2003) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991)). However, regarding the issuance of a writ of mandamus in a discovery matter, this Court has stated:
"Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991). Accordingly, mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions."
*221 Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003).
"Generally, an appeal of a discovery order is an adequate remedy"; therefore, "[t]his Court will not issue the writ of mandamus where the petitioner has `"full and adequate relief"' by appeal." Ocwen Fed. Bank, 872 So.2d at 813 (quoting State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972), quoting in turn State v. Williams, 69 Ala. 311, 316 (1881)). "In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, ... when a privilege is disregarded." Ocwen Fed. Bank, 872 So.2d at 813. Further, "`"[u]nder Rule 26(b)(3), [Ala. R. Civ. P.,] the party objecting to discovery bears the burden of establishing the elements of the work-product exception."'" Ex parte Meadowbrook Ins. Group, Inc., 987 So.2d 540, 548 (Ala.2007) (quoting Ex parte Cummings, 776 So.2d 771, 774 (Ala.2000), quoting in turn Ex parte Garrick, 642 So.2d 951, 952-53 (Ala.1994)).

Analysis
Flowers argues that the statements that are the subject of the discovery order were taken by Flowers's insurance carrier in anticipation of litigation and that they therefore qualify as work product. Sanders argues, on the other hand, that the trial court did not exceed its discretion in ordering Flowers to produce the statements, because, she says, the trial court did not find Barrett's affidavit to be credible and, therefore, Flowers did not meet her burden of proving that the statements are work product.
Documents and tangible things otherwise discoverable, which are prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, are protected as work product and are not ordinarily discoverable. See Rule 26(b)(3), Ala. R. Civ. P.[1]Ex parte Meadowbrook, identifies the elements of the work-product exception to the general discovery rule as follows: "`(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.'" (quoting Johnson v. Gmeinder, 191 F.R.D. 638, 643 (D.Kan.2000)).[2]
*222 This Court recognized in Ex parte Norfolk Southern Railway, 897 So.2d 290, 295 (Ala.2004), that a "recorded statement ... taken by the claims agent ... can be treated as protected work product, assuming other applicable [work-product] criteria ... are satisfied." It appears undisputed that the statements made to Flowers's insurance carrier are "documents" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Rule 26(b)(3), Ala. R. Civ. P. Therefore, the question is whether the statements of Roshell Flowers, Donna Flowers, and Mack Flowers, Jr., taken by Flowers's insurance carrier were, in fact, taken in anticipation of litigation. See Ex parte Nationwide Mut. Fire Ins. Co., 898 So.2d 720, 723 (Ala. 2004) ("A recorded statement taken from a witness by a claims adjuster can be treated as protected work product, assuming the insurer claiming the privilege can show that the statement was taken in anticipation of litigation."). Flowers argues that Barrett's affidavit is sufficient to show that the statements were taken in anticipation of litigation. We agree.
In Ex parte Norfolk Southern Railway, a claims agent testified by affidavit that, at the time he took the recorded statement of a railroad employee regarding a grade-crossing accident, "he had investigated the accident made the basis of the action, that at the time he was investigating the accident he knew that a death had occurred as a result of the accident, and that he expected that a wrongful-death claim would be asserted...." 897 So.2d at 291. The claims agent attested in his affidavit that he anticipated that litigation would result because, "based upon his experience and training as a claims agent, when a fatality or a serious injury occurs in a grade-crossing accident, there is likely to be litigation regarding the accident." 897 So.2d at 295. This Court concluded that the statement of the railroad employee was work product, holding that a recorded statement taken by a claims agent is work product where "[t]he claims agent testifie[s] that, based upon his experience and training as a claims agent, when a fatality or a serious injury occurs in a grade crossing accident, there is likely to be litigation regarding the accident." 897 So.2d at 295. There is no indication that an attorney or claimant had yet contacted the railroad in Ex parte Norfolk Southern Railway; it appears that the claims agent's anticipation of litigation was based on his knowledge of the accident and the fact that a fatality had occurred. 897 So.2d at 291.
Similarly, in Ex parte Nationwide Mutual Fire Insurance Co., we addressed a statement made by an insured driver to his claims adjuster, after the claims adjuster was made aware, by the injured party's insurance agent, that the automobile accident being investigated resulted in only $300 worth of bumper damage to the other vehicle, but caused a knee injury requiring surgery to the occupant of the other vehicle. 898 So.2d at 723. Nationwide's claims adjuster testified that he took the statement of the insured in anticipation of litigation and based his conclusion "upon information indicating to him that [the insured] was free from liability, that [the other] vehicle had sustained little damage, and that [the occupant of that other vehicle] had allegedly sustained a serious knee injury." 898 So.2d at 723. We concluded that "Nationwide made an adequate showing that the statement of its insured was *223 taken in anticipation of litigation" and that "`[f]rom the nature of the case, ... [Nationwide's adjuster] could have reasonably concluded that its insured would be sued.'" Id. (quoting Ex parte State Farm Mut. Auto. Ins. Co., 386 So.2d 1133, 1136 (Ala.1980)). As in Ex parte Norfolk Southern Railway, it appears that the Nationwide agent's anticipation of litigation was premised on his conversation with the injured party's insurance agent, his knowledge of the accident, and the nature of the injuries. Ex parte Nationwide, 898 So.2d at 723.
In the present case, Flowers argues that the circumstances of this case are like those in Ex parte Norfolk Southern Railway. Petition at 12. Barrett, after receiving a letter written by Lancaster's attorney, took the three statements. She testified in her affidavit that, "based on [her] experience and training as a claims agent, when a fatality or severe injury occurs in a premises liability action and the claimant has retained counsel, there is likely to be litigation regarding the accident."
Sanders disagrees. She argues that Barrett's affidavit is defective.[3]
Sanders takes issue with Barrett's affidavit. Sanders asserts that Barrett's affidavit wholly fails to mention the statement of a third witness, Paul Conger. Sanders, in her original request for production, asked Flowers for "[c]opies of any and all statements taken by the insurance company or its adjuster which insures these defendants in this litigation, said statements being taken from Mack Flowers, Jr., Roshell Flowers, and Donna Flowers." Sanders's brief, Exhibit B. Similarly, in her motion to produce, Sanders moved the trial court "to order [Flowers] to produce copies of the statements or recordings of the statements taken by her insurance carrier of Mack Flowers, Jr., Donna Flowers and Roshell Flowers...." Sanders's brief, Exhibit D. It is apparent that Flowers requested only statements the insurance carrier took from Mack Flowers, Jr., Roshell Flowers, and Donna Flowers. There is no evidence indicating that Sanders ever requested Paul Conger's statement; therefore, Sanders's argument that Barrett's *224 failure in her affidavit to address Paul Conger's statement in some way affects her credibility is without merit.
The trial judge has filed an answer to the petition for the writ of mandamus. He contends that Barrett's amended affidavit conflicts with Roshell Flowers's deposition testimony. Although Barrett originally stated that she had a statement made by Roshell Flowers, Barrett later amended her affidavit to reflect that she "could find no evidence of a recorded statement by Roshell Flowers." Petition, Exhibit 6. Sanders and the trial judge, in his answer, assert that this statement conflicts with the following deposition testimony by Roshell Flowers:
"Q: [By Mr. Bedsole, Sanders's attorney]: You don't recall anyone taking a statement from you?
"A: Oh yes, I recall that.
"....
"Q: Were these statements [of Mack Flowers, Jr., Donna Flowers, and yours] signed?
"A: I don't remember writing anything. You mean writing down what happened?
"Q: Did you write down what happened?
"A: No, sir.
"Q: Was it recorded with any type of recording device?
"A: Not that I'm aware of.
"Q: Did someone else write down what you told them and did you sign it?
"A: Not that I'm aware of.
"Q: Do you remember signing any type of statement?
"A: No sir."
Sanders's brief, Exhibit D. From this exchange, it appears that Roshell Flowers discussed the incident involving Lancaster with her insurance carrier. She does not testify that she gave a recorded statement to her insurance carrier. Therefore, Barrett's statement that she could find no such recorded statement does not conflict with Roshell Flowers's deposition testimony.
Moreover, the trial judge's concern in his answer with the inconsistency between Barrett's original affidavit, in which Barrett stated that she had a statement given by Roshell Flowers, and her amended affidavit, in which she stated that she found no evidence of a recorded statement by Roshell Flowers, is fully explained by the deposition testimony.
We agree with Flowers that Ex parte Norfolk Southern Railway and Ex parte Nationwide Mutual Fire Insurance Co. are persuasive. As noted above, Barrett testified in her affidavit that "based on [her] experience and training as a claims agent, when a fatality or severe injury occurs in a premises liability action and the claimant has retained counsel, there is likely to be litigation regarding the accident." Petition, Exhibit 5. We are mindful that just "[b]ecause a claims agent may state conclusively that [her] investigation was conducted in `anticipation of litigation' will not necessarily make it so." Ex parte State Farm, 386 So.2d at 1136-37. However, in light of our decisions in Ex parte Norfolk Southern Railway and Ex parte Nationwide Mutual Fire Insurance Co., Barrett's statements, predicated on her experience and information regarding Lancaster's claim, are sufficient to establish that the statements were taken in anticipation of litigation. We find particularly compelling the facts that, at the time the statements were taken, Barrett was aware that Lancaster had retained counsel, that Lancaster's counsel had stated that he represented Lancaster "on an action or cause of action which she may have" against Flowers, that Barrett was aware of *225 the nature of the accident (premises liability), and that Lancaster's attorney had characterized Lancaster's injuries as "severe," noting that Lancaster's injuries were severe enough to warrant hospitalization and ongoing medical treatment. Furthermore, it appears that in a letter to Lancaster's attorney, dated the day before the statements were taken, Barrett notes a conversation between her and Lancaster's attorney, referencing the fact that Lancaster was still in "rehab," nearly four months after the accident. Petition, Exhibit 5. "From the nature of the case, ... [Barrett] could have reasonably concluded that its insured would be sued." Ex parte State Farm, 386 So.2d at 1136.
Sanders argues, and the trial judge in his answer agrees, that Flowers's insurance carrier, in fact, took the statements in the ordinary course of business. She argues that when Barrett took the statements, the only document Barrett had regarding the incident was the letter from Lancaster's attorney, and, she argues, this was an insufficient basis on which Barrett could have anticipated litigation. The trial judge states in his answer to the petition:
"Although the Affidavits state in several places that Mrs. Barrett took these statements ... in anticipation of litigation, I feel that this is a self-serving statement with no foundation. Based on my experience on the bench and my practice as a member of the Bar, I know that when insurance companies receive a letter notifying them of an accident, they begin an investigation by taking statements as a matter of policy and part of their routine business in investigating the claim. It is not done in anticipation of litigation but simply to find out what witnesses, including its insured, know about the accident and the injuries in the accident. I did not accept Mrs. Barrett's assertions that she could anticipate litigation after receiving one letter from the Plaintiff's attorney and without any information from her insured or witnesses that the accident happened, how it happened and the extent of the injuries to the Plaintiff.
"I did not accept the conclusion stated in Mrs. Barrett's affidavits that any time she gets a letter from an attorney who states that there are severe injuries and before she has any other information concerning liability or the injuries that any statements that she takes were made in anticipation of litigation."
Judge McDermott's answer at 4-5. To similar effect, Sanders argues that at the time the statements were taken "Barrett would have no basis for reasoning that there was going to be litigation simply based on a letter from [Lancaster's] counsel." Sanders's brief at 15.
First, we agree with Flowers that this Court may not consider the trial judge's experiences as evidence, because the judge was not a witness, and those experiences are, therefore, outside the record. See Ex parte Baker, 459 So.2d 873, 876 (Ala.1984) ("In determining whether the trial court [exceeded] its discretion, this [C]ourt is bound by the record and cannot consider a statement or evidence in brief that was not before the trial court. Wilson v. Crosby Lumber Co., 386 So.2d 1173 (Ala.Civ.App. 1980); King v. Smith, 288 Ala. 215, 259 So.2d 244 (1972). On review by mandamus, we must look only at those facts before the trial court. See Ex parte Harrington Mfg. Co., 414 So.2d 74 (Ala. 1982).").
Further, it is not necessary that statements be made solely in anticipation of litigation to be treated as privileged work product. In Ex parte Alabama Department of Youth Services, 927 So.2d 805, 808 (Ala.2005), this Court held that "[t]he question as to whether the investigative *226 reports are work-product when there are several motivating causes, other than anticipated litigation, for preparing them turns on whether it was reasonable ... to assume, in light of circumstances, that litigation could be expected." See also Ex parte State Farm, 386 So.2d at 1136 ("From the nature of the case, a death claim, State Farm's agent could have reasonably concluded that its insured would be sued. This was not the type of fender-bender case where a settlement with the insured would likely occur without a lawsuit."). In the case before us, Barrett was aware that Lancaster allegedly suffered severe injuries on Flowers's premises and that she was represented by counsel "on an action or cause of action which she may have" against Flowers. As we noted previously, according to our decisions in Ex parte Norfolk Southern Railway and Ex parte Nationwide Mutual Fire Insurance Co., this knowledge was sufficient to establish that Barrett could have reasonably foreseen that her insured would be sued.

Conclusion
We conclude that the statements made to Barrett by Donna Flowers and Mack Flowers, Jr., were taken by Flowers's insurance carrier in anticipation of litigation; thus, the trial court exceeded its discretion when it ordered Flowers to produce the statements. Therefore, we issue the writ directing the trial court to vacate its order compelling Flowers to produce the statements.
PETITION GRANTED; WRIT ISSUED.
LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., dissents.
COBB, Chief Justice (dissenting).
I respectfully dissent. An examination of the material submitted with this petition makes plain that the trial court thoroughly and thoughtfully considered the evidence as to whether the statements given by Roshell Flowers, Mack Flowers, Jr., and Donna Flowers (owners of the premises where the injury occurred and witnesses to the accident) were, indeed, taken in anticipation of litigation and concluded that they were not. It should be noted that the depositions of Roshell Flowers, Mack Flowers, Jr., and Donna Flowers had already been taken by Kimberly R. Sanders's counsel when the request to produce these statements was made. Two affidavits were produced by the insurance agent, Barbara Barrett, to support the refusal, under the work-product privilege, to produce the statements. In its response to the arguments in this petition, the trial judge filed an answer discussing these affidavits, which reads as follows:
"In my examination of the Affidavits of Barbara Barrett, the claims adjustor, I noticed in the first Affidavit that she stated she had taken statements from Roshell Flowers, Mack Flowers, Jr. and Donna Flowers on August 12, 2005, but in the Amended Affidavit, she stated that she did not have a recorded statement from Roshell Flowers, but only from Mack Flowers, Jr. and Donna Flowers. In fact the Affidavits conflict with the extracts of the deposition of Roshell Flowers, in that she stated that she did give a statement to the insurance company.
"From her Affidavits it would appear that the only document that Barbara Barrett had in her possession when she obtained the statements of Mack Flowers, Jr. and Donna Flowers on August 12, 2005 was a letter from the Plaintiff's attorney dated May 24, 2005, addressed *227 to Roshell's Café and Deli, advising that his client had suffered injuries arising out of an accident which occurred at Roshell's on April 6, 2005. At this time there was no fatality involved and she had no information about the accident and no other information about the injuries, including hospital bills or medical information. In fact there is no information in the Affidavit as to when Mrs. Barrett received the letter from the Plaintiff's attorney dated May 24, 2005 addressed to her insured, since her first letter to the Plaintiff's attorney is dated August 11, 2005.
"Although the Affidavits state in several places that Mrs. Barrett took these statements on August 12, 2005, in anticipation of litigation, I feel that this is a self-serving statement with no foundation. Based on my experience on the bench and my practice as a member of the Bar, I know that when insurance companies receive a letter notifying them of an accident, they begin an investigation by taking statements as a matter of policy and part of their routine business in investigating the claim. It is not done in anticipation of litigation but simply to find out what witnesses, including its insured, know about the accident and the injuries in the accident. I did not accept Mrs. Barrett's assertions that she could anticipate litigation after receiving one letter from the Plaintiff's attorney and without any information from her insured or witnesses that the accident happened, how it happened and the extent of the injuries to the Plaintiff.
"I did not accept the conclusion stated in Mrs. Barrett's affidavits that any time she gets a letter from an attorney who states that there are severe injuries and before she has any other information concerning liability or the injuries that any statements that she takes were made in anticipation of litigation. Without any of this additional information she would not even have known whether she was going to deny or admit the claim. This is apparent in her correspondence dated August 11, 2005 in which she requested medical information from the Plaintiff's attorney. She is merely gathering information on which to deny or admit the claim as a part of her investigation and not in anticipation of litigation."
Judge McDermott's answer at 3-5.
The above-quoted answer exemplifies the thoughtful exercise of the trial court's discretion for the purpose of determining whether the statements constituted protected trial-preparation materials under Rule 26(b)(3), Ala. R. Civ. P. The importance of the information sought is evident in the fact that the information could show inconsistent statements concerning the accident and how it occurred. Rule 613(a), Ala. R. Evid., provides that "[i]n examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown or disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel." I conclude that, in determining that Flowers had not met her burden of showing that the statements in question were made in anticipation of litigation, the trial court was properly exercising its discretion in ordering Flowers to produce the statements.
The constraints of the caselaw noted by the majority, see, e.g., Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134, 1136 (Ala.2003); Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991), are simply ignored in favor of an analysis in which the majority substitutes its discretion for that of the trial court in weighing the evidence as to whether the *228 statements constitute materials prepared in anticipation of litigation. In the past, this Court has wisely declined to establish a new interlocutory appellate process based on second-guessing the trial court's management of discovery based on the principle that, "[i]n light of the trial court's broad discretion concerning matters of discovery, we defer to the trial court's perception of the facts and procedural posture of the parties...." Ex parte Alapati, 826 So.2d 792, 798 n. 2 (Ala.2002)(discussing appellate review of the trial court's protective orders in matters of discovery). Because I cannot approve of abandoning this principle, I respectfully dissent.
NOTES
[1] Rule 26(b)(3) provides, in part:

"(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule [concerning expert witnesses], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney ...) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
[2] The dissenting opinion notes that "[t]he importance of the information sought is evident in the fact that the information could show inconsistent statements concerning the accident and how it occurred." It is certainly possible, as the dissent speculates, that a statement (or any other documentary evidence) that qualifies as work product under Rule 26(b)(3) would be useful to opposing counsel for impeachment or other purposes; however, notably, the possibility of usefulness to opposing counsel is not a factor in the initial determination of whether a statement qualifies as work product. See Ex parte Meadowbrook, 987 So.2d at 548 (identifying the elements of the work-product exception to the general discovery rule as "`that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.'" (quoting Johnson v. Gmeinder, 191 F.R.D. at 643)).
[3] Sanders also makes the following argument:

"Under Rule 613(a)[, Ala. R. Evid.], before the Plaintiff can examine the witness concerning a prior inconsistent statement, the statement if in writing, must be shown to the opposing counsel.... [Sanders] would respectfully submit that in order to show that either Donna Flowers or Mack Flowers, Jr. made a prior statement or a prior inconsistent statement concerning this accident, the statements must be shown at least to the opposing counsel."
Sanders's answer brief at 19. Rule 613(a), Ala. R. Evid., provides:
"(a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel."
Sanders provides no insight into the applicability or relevance of Rule 613(a) to the discovery of the statements in question, as contrasted with their use if and when they are discovered. In fact, it appears that this rule applies only to Sanders's potential use of those statements at trial, if Sanders actually has them, if they actually contain impeachment material, and if Sanders chooses to use the statements against these witnesses at trial. See Rule 613(a), Ala. R. Evid. This conclusion is supported by the Author's Statement of the Rule regarding Rule 613(a) in Charles M. Gamble, Gamble's Alabama Rules of Evidence (1995), which states that, "[h]enceforth the cross-examining party may ask about a prior statement without first showing it to the witness or apprising the witness of its contents. The statement, however, must be shown or its contents disclosed to opposing counsel upon request." (Footnotes omitted.) Rule 613(a) applies only to the use of the statements at trial, not to the discovery of the statements.