BRYAN, Justice.
Schnitzer Steel Industries, Inc. (“Schnitzer Steel”), has petitioned this Court for a writ of mandamus directing the Jefferson Circuit Court to vacate its order compelling discovery of a post-accident investigation report (“the report”) related to an accident that occurred at the Birmingham facility of Schnitzer Southeast, LLC, a subsidiary of Schnitzer Steel. We grant the petition and issue the writ.

Facts and Procedural History

In September 2008, Jason Jackson had part of his leg amputated as a result of a workplace accident that occurred at Schnitzer Southeast’s metal-recycling facility in Birmingham. After the accident, *489 Schnitzer Steel instigated a post-accident investigation. Josephine Cetta, who was a safety director at Schnitzer Steel at the time of Jackson’s accident, and Richard Taylor conducted the investigation. Cetta drafted a report regarding the investigation, which was then transmitted to Doug Dunaway, who was Schnitzer Steel’s corporate health and safety director, for review. Cetta testified in her deposition that both Dunaway and in-house counsel at Schnit-zer Steel reviewed and edited the report. She also testified that in-house counsel marked the report as privileged.
Sometime after the accident but before Cetta’s report was created, Jackson filed a worker’s compensation claim with Schnit-zer Southeast. In September 2010, Jackson and his wife, Latonya Jackson, filed a separate action against Schnitzer Steel and certain of its employees, seeking additional recovery for the injuries Jackson suffered.
In April 2012, the trial court ordered Schnitzer Steel to produce, among other things, “reports of safety inspections.” On May 11, 2012, counsel for Schnitzer Steel filed a notice in the trial court, stating that it had produced “all reports of inspections that were conducted at the Birmingham Yard between January 1, 2006, and April 20, 2012, other than the post-accident investigation report, which the Court previously ruled was privileged and non discoverable.” Jackson moved to compel production of the report, but Schnitzer Steel argued in response that the report was protected by the work-product doctrine because, it said, it had been prepared in reasonable anticipation of litigation. The trial court granted the motion to compel. Schnitzer Steel now petitions this Court for a writ of mandamus, “directing the Trial Court to vacate that portion of its order granting Jackson’s Motion to Compel and directing the Trial Court to enter a new order denying Jackson’s Motion to Compel.” Petition, at B.

Analysis

In its petition, Schnitzer Steel argues that “the Trial Court exceeded its discretion when it ordered Schnitzer Steel to produce the Report even though the Report was prepared in reasonable anticipation of litigation and is protected from discovery under the work product doctrine.” Petition, at 3. This Court has stated:
“ ‘Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991). Accordingly, mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.’
“Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003).
“Moreover, this Court will review by mandamus only those discovery matters involving (a) the disregard of a privilege, (b) the ordered production of ‘patently irrelevant or duplicative documents,’ (c) orders effectively eviscerating ‘a party’s entire action or defense,’ and (d) orders denying a party the opportunity to make a record sufficient for appellate review of the discovery issue. 872 So.2d at 813-14. The order challenged in this case involving alleged work product ... is reviewable under category (a).”
Ex parte Meadowbrook Ins. Grp., Inc., 987 So.2d 540, 547 (Ala.2007).
*490 With regard to the work-product doctrine, this Court has stated:
“Documents and tangible things otherwise discoverable, which are prepared in anticipation of litigation or trial by or for another party or by or for that other party’s representative, are protected as work product and are not ordinarily discoverable. See Rule 26(b)(3), Ala. R. Civ. P. Ex parte Meadowbrook identifies the elements of the work-product exception to the general discovery rule as follows: ‘ “(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or representative of that party.” ’ ”
Ex parte Flowers, 991 So.2d 218, 221 (Ala. 2008) (quoting Ex parte Meadowbrook, 987 So.2d at 548, quoting in turn Johnson v. Gmeinder, 191 F.R.D. 638, 643 (D.Kan. 2000)).
It is undisputed that the report meets the first and third elements of the work-product doctrine: the report is a “document!] or tangible thing!]” and “[was] prepared by or for a party or a representative of that party.” Ex parte Flowers, 991 So.2d at 221. Jackson also concedes that “[t]he factual situation surrounding the investigation and the report could lead to the assumption that litigation could be expected.” Jackson’s brief, at 8. Thus, it is undisputed that anticipation of litigation was reasonable, and the question left for this Court to address is whether the report was, in fact, prepared in anticipation of litigation.
In Ex parte Meadowbrook, this Court stated:
“There is a ‘requirement [in] Rule 26(b)(3) of a causal relationship between the impending litigation and the production or use of the documents.’ [Ex parte State Farm Mut. Auto. Ins. Co., 761 So.2d 1000, 1004 (Ala.2000) (Lyons, J., concurring specially) ]. The inquiry ““should be whether, in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.’ ” ’ 761 So.2d at 1002 (opinion of the Court) (quoting Sims v. Knollwood Park Hosp., 511 So.2d 154, 157 (Ala.1987), quoting in turn Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir.1983)). Thus, ‘the purpose for which a party created a document is the fundamental requirement of the Rule, and [regardless of whether] litigation is reasonably anticipated, certain, or even underway, a court must still undertake an examination of why a document was produced.’ ”
987 So.2d at 548-^49 (quoting Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 661 (S.D.Ind.1991) (emphasis omitted)).
However, this Court in Ex parte Flowers stated:
“[I]t is not necessary that statements be made solely in anticipation of litigation to be treated as privileged work product. In Ex parte Alabama Department of Youth Services, 927 So.2d 805, 808 (Ala. 2005), this Court held that ‘[t]he question as to whether the investigative reports are work-product when there are several motivating causes, other than anticipated litigation, for preparing them turns on whether it was reasonable ... to assume, in light of circumstances, that litigation could be expected.’ ”
991 So.2d at 225-26.
Schnitzer Steel argues that “Stephanie Roe’s affidavit establishes that the report was prepared in anticipation of litigation.” Petition, at 6. Roe is the Workers’ Com *491 pensation Manager at Schnitzer Steel. She testified as follows in her affidavit:
“3. On September 9, 2008, an accident involving Jason Jackson occurred at the Birmingham, Alabama location of Schnitzer Southeast. This accident was assigned to me and I oversaw the handling of the claims stemming from this accident and the gathering and preparation of documents relating to the accident.
“4. Whenever accidents likely to lead to litigation occur at a facility operated by Schnitzer [Steel] or any of its subsidiaries or affiliates (including Schnitzer Southeast), a post-accident investigation report is completed describing the circumstances surrounding the accident. While Schnitzer [Steel] does not have a written policy regarding when a post-accident investigation report is to be completed, such a report is only prepared when an accident occurs that is likely to lead to litigation, and employees do not complete a post-accident investigation report in the normal course of business.
“5. The post-accident investigation report prepared in relation to Mr. Jackson’s accident is a document that was prepared in anticipation for litigation by representatives of Schnitzer [Steel] and/or Schnitzer Southeast.
“6. Because of the nature of the injuries suffered by Jason Jackson during the accident and the circumstances surrounding the accident, Schnitzer [Steel] and Schnitzer Southeast believed that litigation involving the accident was likely when the report was created.
“7. Before the report was created, a workers’ compensation claim had already been filed by Mr. Jackson.
“8. The primary motivating purpose behind the creation of the report was to aid in anticipated future litigation.
“9. In house counsel for Schnitzer [Steel] were involved in the preparation and editing of the report and marked the report as ‘Attorney Client Privilege Prepared for Potential Litigation.’ ”
Jackson argues, however, that the deposition testimony of Cetta, who prepared the initial draft of the report, “establishes that the report was prepared in the normal course of business and to address safety concerns and not in anticipation of litigation.” Jackson’s brief, at 4. Jackson also argues that “Cetta’s deposition testimony establishes that the report was prepared for operational safety concerns.” Id., at 6. Cetta testified that, following the accident, she traveled to the Birmingham facility to conduct the investigation. She testified that such investigations were “routine,” that they were part of Schnitzer Steel’s “process,” and that Schnitzer Steel “used the same procedure for other injuries, cuts to bruises to burns.” Cetta also testified that Schnitzer Steel “was specifically for operations, to review the head of operations and understand what happened, and make sure that they understood ... how to prevent this from ever happening again.” Cetta testified that the final report was distributed to the top managers at various facilities. Jackson argues that this testimony indicates that the report was prepared for operational-safety purposes, not in anticipation of litigation.
However, Cetta also testified in her deposition that, although she prepared an initial draft of the report, her draft was sent to Doug Dunaway, who “worked closely with counsel” at Schnitzer Steel to finalize the report. Cetta testified that Dunaway and Schnitzer Steel’s in-house counsel reviewed and revised her draft and that in-house counsel added language to the report indicating that it was privileged. Cetta also testified that, although investigations of accidents were routine, “[a]s far *492 as the [report], it was reviewed by counsel, which typically they didn’t do that for all accidents. That was a special injury, obviously, and they did make some changes or additions to the document.” The report was not distributed until after it had been reviewed and revised by Dunaway and in-house counsel. Although she stated that “[she] went down [to Schnitzer Southeast] because we wanted to make sure that this ... doesn’t happen again,” she did acknowledge that “there were definitely concerns” at that time about potential litigation.
In Ex parte Alabama Department of Youth Services, 927 So.2d 805 (AIa.2005), this Court addressed whether investigative reports, which the plaintiffs in that case argued “were not prepared solely in anticipation of litigation,” 927 So.2d at 808, could constitute protected work-product. This Court stated: “The question as to whether the investigative reports are work-product when there are several motivating causes, other than anticipated litigation, for preparing them turns on whether it was reasonable for DYS to assume, in light of the circumstances, that litigation could be expected.” Id.
The Court also noted that in Ex parte Norfolk Southern Railway, 897 So.2d 290 (Ala.2004), “[w]e held that a recorded statement taken by a claims agent was work-product where ‘[t]he claims agent testified that ... when a fatality or a serious injury occurs in a grade-crossing accident, there is likely to be litigation regarding the accident.’ ” Ex parte Alabama Dep’t of Youth Servs., 927 So.2d at 808 (quoting Ex parte Norfolk Southern Railway, 897 So.2d at 295). We concluded:
“The gravity and extent of the accusations [of physical and sexual abuse] made by the detainees at the Chalkville campus, as well as the Samford letter, [in which DYS’s general counsel stated that he anticipated litigation would arise,] fully support DYS’s position that it anticipated litigation as a result of the alleged incidents, and that the anticipation of litigation was a significant factor in its decision to have the investigative reports prepared. In consideration of these factors, and guided by our holding in Norfolk Southern R[ailway], we find that when the investigative reports were prepared there was clearly a likelihood of litigation resulting from the alleged incidents and, that, therefore, the trial court erred in failing to determine that the investigative reports were work-product prepared in anticipation of litigation.”
Ex parte Alabama Dep’t of Youth Servs., 927 So.2d at 808.
Similarly, in Ex parte Flowers, this Court noted that “it is not necessary that statements be made solely in anticipation of litigation to be treated as privileged work product.” 991 So.2d at 225. In Flowers, an insurance company took several statements from witnesses to an accident that occurred outside a restaurant owned by Roshell Flowers as a result of which Marilyn Ruth Smith Lancaster was severely injured. Lancaster was hospitalized and eventually died, allegedly as a result of the injuries she suffered in the accident. The personal representative of Lancaster’s estate sued Flowers and moved the trial court to compel discovery of the witness statements collected by the insurance company.
In support of her opposition to the motion to compel, Flowers presented the affidavit of Barbara Barrett, the insurance adjuster, who testified that Flowers had forwarded her a letter that she had received from Lancaster’s attorney, indicating that he was representing Lancaster on *493 a claim that she might have as a result of the accident. Barrett also testified that
“she thereafter initiated an investigation, which she believed was in anticipation of litigation. Barrett stated that she anticipated that there would be litigation because ‘[biased on [her] experience and training as a claims agent, when a fatality or severe injury occurs in a premises liability action and the claimant has retained counsel, there is likely to be litigation regarding the accident.’ As part of her investigation she interviewed and took statements from Roshell Flowers, Mack Flowers, Jr., and Donna Flowers.”
Ex parte Flowers, 991 So.2d at 220.
The trial court granted the estate’s motion to compel, and Flowers petitioned for mandamus relief, arguing that the statements were protected by the work-product doctrine. This Court stated:
“We are mindful that just ‘[b]ecause a claims agent may state conclusively that [her] investigation was conducted in “anticipation of litigation” will not necessarily make it so.’ Ex parte State Farm [Mut. Auto. Ins. Co.], 386 So.2d [1133,] 1136-37 [ (Ala.1980) ]. However, in light of our decisions in Ex parte Norfolk Southern Railway and Ex parte Nationwide Mutual Fire Insurance Co., [898 So.2d 720, 723 (Ala.2004),] Barrett’s statements, predicated on her experience and information regarding Lancaster’s claim, are sufficient to establish that the statements were taken in anticipation of litigation. We find particularly compelling the facts that, at the time the statements were taken, Barrett was aware that Lancaster had retained counsel, that Lancaster’s counsel had stated that he represented Lancaster ‘on an action or cause of action which she may have’ against Flowers, that Barrett was aware of the nature of the accident (premises liability), and that Lancaster’s attorney had characterized Lancaster’s injuries as ‘severe,’ noting that Lancaster’s injuries were severe enough to warrant hospitalization and ongoing medical treatment.”
Ex parte Flowers, 991 So.2d at 224-25.
The Court went on to conclude:
“[I]t is not necessary that statements be made solely in anticipation of litigation to be treated as privileged work product. In Ex parte Alabama Department of Youth Services, 927 So.2d [at] 808 ..., this Court held that ‘[t]he question as to whether the investigative reports are work-product when there are several motivating causes, other than anticipated litigation, for preparing them turns on whether it was reasonable ... to assume, in light of circumstances, that litigation could be expected.’ ... In the case before us, Barrett was aware that Lancaster allegedly suffered severe injuries on Flowers’s premises and that she was represented by counsel ‘on an action or cause of action which she may have’ against Flowers. As we noted previously, ... this knowledge was sufficient to establish that Barrett could have reasonably foreseen that her insured would be sued.”
Ex parte Flowers, 991 So.2d at 225-26.
Here, the evidence before this Court indicates that, although anticipation of litigation may not have been the sole factor for preparing the report, it was “a significant factor in [Schnitzer Steel’s] decision to have the investigative report[] prepared.” Ex parte Alabama Dep’t of Youth Sens., 927 So.2d at 808. As noted previously, Roe testified that it was the primary purpose for the report and that such reports were prepared only when litigation was anticipated. Cetta acknowledged that the report was reviewed and revised by in-house counsel before it was finalized and *494 that a review of an accident report by in-house counsel did not occur in the ordinary course of business. She also testified that there were concerns about potential litigation at the time she did her inspection of the accident involving Jackson at Schnitzer Southeast.
As in Ex parte Alabama Department of Youth Services and Ex parte Flowers, there may have been “several motivating causes, other than anticipated litigation, for preparing [the report],” but “it was reasonable for [Schnitzer Steel] to assume, in light of circumstances, that litigation could be expected.” Ex parte Alabama Dep’t of Youth Servs., 927 So.2d at 808; Ex parte Flowers, 991 So.2d at 226. Therefore, we agree with Schnitzer Steel that the report is protected work-product, and the trial court erred in compelling discovery of that document.

Conclusion

For the foregoing reasons, we hold that the trial court exceeded its discretion by ordering Schnitzer Steel to produce the report, which was prepared in reasonable anticipation of litigation. Therefore, we grant Schnitzer Steel’s petition and issue the writ of mandamus, directing the trial court to vacate its order granting the motion to compel discovery of the report and to enter an order denying that motion.
PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, MAIN, and WISE, JJ., concur.
MOORE, C.J., and PARKER and MURDOCK, JJ., dissent.